IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

R.T. DOE
    Plaintiff,               :

    V.                     :


CITY OF WILKES-BARRE and  :    **JURY TRIAL DEMANDED**
ROBERT COLLINS,
    Defendants       :
                                NO.

## COMPLAINT

Plaintiff R.T. Doe[1], by and through her attorneys, Barry H. Dyller,

Esq., Shelley L. Centini, Esq., Theron J. Solomon, Esq., Matthew L.

Clemente, Esq., and the Dyller Law Firm for her Complaint alleges as

follows:

---

[1] The plaintiff and other persons referred to herein by pseudonyms are all adult females, designated by their initials to protect their privacy and well-being in this very delicate matter concerning sexual abuse.  The actual identities of the plaintiff and others are known to the defendants.  If defendants claim that they do not know any person's identity, counsel will provide such information.  H. Doe, D. Doe, C. Doe, H.A. Doe, and R. Doe, referred to below in order to show a pattern and the City of Wilkes-Barre's custom, are plaintiffs in a related lawsuit in this Court, docketed at 3:19-cv-879.  This separate action is filed only because defendants chose not to consent to an amended complaint, and the statute of limitations was near expiring.

## Jurisdiction and Venue

1.    This action arises out of violations of 42 U.S.C. § 1983 and the common law.

2.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

3.    Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because all defendants reside in this State and all or some of the defendants reside in this judicial district, and because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## The Parties

4.    At all relevant times, the plaintiff was an adult female resident of Luzerne County, Pennsylvania.

5.    At all times relevant hereto, defendant Robert Collins ("Collins") was a police officer employed by the Wilkes-Barre City Police Department.

6.    Collins is a resident of Luzerne County, Pennsylvania.

7.    Defendant City of Wilkes-Barre is a city in Luzerne County, Pennsylvania.

## Background

### The Incident with H. Doe

8.    On May 21, 2016, H. Doe was driving a friend's car in Wilkes-Barre.

9.    At the time, H. Doe did not have a driver's license.

10.   Collins pulled over H. Doe because he knew she had no driver's license from prior contacts with her and she had committed a motor vehicle violation.

11.   Collins was in uniform and working for Wilkes-Barre City.

12.   At the time, Collins did not take H. Doe into custody for the violation.

13.   A short time later, H. Doe was walking near Carey Avenue in Wilkes-Barre and again encountered Collins.

14.   H. Doe asked Collins not to file charges regarding driving without a license.  H. Doe did not want to go to jail or worry about fines.

15.   H. Doe got into the back of Collins' police car and was told that if she performed oral sex on Collins, he would not file charges.

16.   Collins drove to the rear of an abandoned building in downtown Wilkes-Barre to a secluded, dark area.

17.   Both H. Doe and Collins got out of the car, and Collins told H. Doe he would not file the charge against her if she performed oral sex on him.

18.   Collins then used force on H. Doe, abruptly throwing her to the ground roughly.

19.   H. Doe was upset with this rough treatment and told Collins she needed the charge not to be filed against her but did not want to be manhandled like that.

20.   Collins unbuttoned and unzippered his pants and H. Doe began to perform oral sex on Collins while they were both outside of the car.

21.   H. Doe did not consent.  H. Doe was forced to perform the sex act on Collins because of Collins' oppression and coercion, and promise not to charge her with an offense which would cost her fines she could not afford.

22.   While Collins was orally raping H. Doe, they both heard a noise coming from inside of the abandoned building.

23.   Collins pulled up his pants and walked around the building with his flashlight to investigate the sound.

24. Collins returned to the police car where H. Doe remained, got in the car, and said he was leaving.

25. Collins left H. Doe in this dark and secluded location, alone, after orally raping her, forcing her to walk home.

26. Two days later, on May 23, 2016, Collins charged H. Doe with driving without a license pursuant to 75 Pa.C.S. § 1543(a) stemming from the May 21, 2016 incident.

27. H. Doe subsequently went to the Wilkes-Barre Police station to speak to Collins about charging her despite his promise not to if she performed oral sex on him.

28. Collins took H. Doe to a room in the Wilkes-Barre Police station and told her that the charge was filed because she did not "finish" performing oral sex on him.

29. Collins then directed H. Doe to expose her breasts to him.

30. Again, H. Doe complied. However, her compliance was not consent. H. Doe was forced to expose her breasts to Collins because she believed that was what would be necessary to have the charge dismissed since she did not "finish" performing oral sex on Collins.

31. Ultimately, Collins never withdrew the charge against H. Doe, who pled guilty and paid the fines associated with the charge.

5

32.  As a result of Collins' actions as described above, H. Doe suffered significant injuries and damages.

33.  At the time of Collins' actions toward H. Doe as described above, H. Doe was unaware of the City of Wilkes-Barre's policies and customs[2] and that they were a cause of Collins' actions toward her and a cause of her injuries.

### The Incident with D. Doe

34.  On February 26, 2017, Collins approached D. Doe as she was on Carey Avenue in Wilkes-Barre.

35.  Collins, who was in uniform and working for Wilkes-Barre City, told D. Doe that she had an active arrest warrant.

36.  Collins then told D. Doe that he would give her $20.00 if she would do him a "favor."

37.  Collins directed D. Doe to get into the back of Collins' vehicle. Collins drove D. Doe to a secluded recreational area in South Wilkes-Barre.

38.  Collins then directed D. Doe to perform oral sex on him, which she did.

---

[2] The City of Wilkes-Barre's policies and customs which permitted or condoned Collins' abuse of citizens are described below.

39.   D. Doe did not consent.  D. Doe was forced to perform the sex act on Collins because of Collins' oppression and coercion, and the understanding that Collins would not take D. Doe in on the active arrest warrant.

40.   When Collins was finished orally raping D. Doe, he left her at the secluded location to walk home.

41.   As a result of Collins' actions as described above, D. Doe suffered significant injuries and damages.

42.   At the time of Collins' actions toward D. Doe as described above, D. Doe was unaware of the City of Wilkes-Barre's policies and customs and that they were a cause of Collins' actions toward her and a cause of her injuries.

The Incident with C. Doe

43.   On several occasions between 2011 and 2012, Collins approached C. Doe walking in Wilkes-Barre.

44.   In March of 2011, Collins told C. Doe that her name was "on the hot sheet," meaning that there was a warrant for her arrest.

45.   Collins told C. Doe that he could arrest her and take her to jail, or he could do her a "favor."

46. Collins directed C. Doe to get into his vehicle. Collins drove her to a house near the intersection of Lehigh Street and Park Avenue in Wilkes-Barre.

47. In the house, Collins directed C. Doe to smoke crack cocaine in his presence. Collins instructed C. Doe to blow the smoke into his face because he "liked the smell."

48. Collins forced C. Doe to watch pornographic movies with him. Collins then forcefully directed C. Doe to perform oral sex on him.

49. In fall of 2011, Collins again spotted C. Doe walking in Wilkes-Barre. In fear for her safety, C. Doe hid in a backyard until she believed Collins had left the area.

50. When C. Doe came out to continue travel, Collins spotted her and pulled up to her in an unmarked police vehicle.

51. Collins took C. Doe into custody and told her that she was on the "hot sheet" and was going to jail. Collins seemed serious and actually drove C. Doe near the prison.

52. Once C. Doe appeared to be scared enough, Collins turned around and went back to the home near the intersection of Lehigh Street and Park Avenue in Wilkes-Barre.

53.   The room was set up the same way it was set up on the earlier occasion.  It had an air mattress, a tv stand with crack cocaine and paraphernalia, and a portable DVD player with pornographic videos playing.

54.   Collins instructed C. Doe to smoke the crack cocaine and blow the smoke into his face.

55.   Collins had forcible sex with C. Doe including vaginal penetration.  Collins wore a condom during the sexual assault and took it with him when he was finished.

56.   In the summer of 2012, C. Doe was walking in Wilkes-Barre when Collins spotted her and approached her.  Collins stated that he just watched her purchase drugs and was arresting her.

57.   C. Doe was not alone.  She was with another female friend. Collins took C. Doe and the other female into custody.

58.   Collins took the women to the same house near the intersection of Lehigh Street and Park Avenue.  Collins took the women to the same room that was still set up with an air mattress, tv stand with crack cocaine and paraphernalia, and a portable DVD player playing pornographic videos.

59.    Collins again instructed the women to smoke crack cocaine and blow the smoke in his face.

60.    Collins grabbed C. Doe by her head and removed his penis from his pants.  Collins forced C. Doe to begin to perform oral sex on him.

61.    At the time of Collins' actions toward C. Doe as described above, C. Doe was unaware of the City of Wilkes-Barre's policies and customs and that they were a cause of Collins' actions toward her and a cause of her injuries.

### The Incident with H.A. Doe

62.    In April of 2009, H.A. Doe was stopped by Collins on Carey Avenue in Wilkes-Barre.

63.    Believing she had an outstanding arrest warrant, H.A. Doe provided Collins with a false name.

64.    Collins arrested H.A. Doe, placed her in the back of his police car, and began to drive to the Wilkes-Barre City Police Department headquarters.

65.    While en route, Collins told H.A. Doe that the false identification charge could "go away."

66.    Collins then made a detour and drove H.A. Doe down a dark alley in South Wilkes-Barre.

67.   Collins got out of the car, unbuckled his pants, and directed H.A. Doe out of the car.

68.   Collins took the handcuffs off H.A. Doe and again told her that he could "make it all go away."

69.   Collins directed H.A. Doe to perform manual sex on him.

70.   H.A. Doe did not consent.  H.A. Doe was forced to perform the sex act on Collins because of Collins' oppression and coercion, and his threat to charge her with a crime.

71.   H.A. Doe began to perform manual sex on Collins at his direction.

72.   Before Collins ejaculated, H.A. Doe stopped performing manual sex him and told Collins that she could not complete the sex act.

73.   Collins became angry and told H.A. Doe because she refused to complete the sex act, he would bring charges against her.

74.   Following this forced sexual encounter, Collins slammed the door of the police car and drove H.A. Doe to the Wilkes-Barre City Police Department headquarters.

75.   Collins charged H.A. Doe with forgery, unsworn falsification to authorizes, and false identification to law enforcement.

76.   As a result of Collins' actions as described above, H.A. Doe suffered significant injuries and damages.

77.   At the time of Collins' actions toward H.A. Doe as described above, H.A. Doe was unaware of the City of Wilkes-Barre's policies and customs and that they were a cause of Collins' actions toward her and a cause of her injuries.

<u>The Incident with R. Doe</u>

78.   One evening in mid-July of 2014, R. Doe and two males were in a vehicle in the housing projects known as Sherman Hills in Wilkes-Barre City.

79.   R. Doe was a passenger in the back seat of the vehicle.

80.   Collins stopped the vehicle.

81.   Collins was in uniform and was driving a marked police vehicle.

82.   Collins approached the rear of the vehicle and removed R. Doe.

83.   R. Doe was the only female in the vehicle and was not the driver of the vehicle.

84.   Collins physically searched R. Doe.

85.   In the course of physically searching R. Doe, Collins felt R. Doe's breasts and crotch area.  Collins also grabbed R. Doe's buttocks and told her he "likes what he feels."

86.   As Collins groped R. Doe's breasts, he found a bundle of heroin inside of her bra.

87.   Collins put the bundle of heroin into his pants pocket.

88.   Collins then put R. Doe into the front seat of his police vehicle.

89.   Collins told R. Doe that if she wanted to get herself out of trouble, she had to go with him.

90.   Collins drove to the back of the Sherman Hills apartment building and parked in a vacant parking lot.

91.   Collins unzippered his pants and pulled out his penis.

92.   Collins then told R. Doe she had to perform oral sex on him if she did not want to go to jail.

93.   R. Doe did not consent.  R. Doe was forced to perform the sex act on Collins because of Collins' oppression and coercion, and his threat to charge her with a crime.

94.   R. Doe performed oral sex on Collins at his direction.

95.   R. Doe was crying the entire time she performed oral sex on Collins.

96.    During this forced sexual act, Collins informed R. Doe that she had to swallow his ejaculate.

97.    Following this forced sexual encounter, Collins instructed R. Doe to stick out her tongue and he inspected her mouth to make sure that she did swallow the semen—the evidence of his completed rape.

98.    Collins then told R. Doe to get out of the police vehicle and he left R. Doe in the vacant parking lot.

99.    Collins never charged R. Doe with any crimes relating to this encounter.

100. In 2015, R. Doe reported this incident with Collins to the Pennsylvania State Police.

101. As a result of Collins' actions as described above, R. Doe suffered significant injuries and damages.

102. At the time of Collins' actions toward R. Doe as described above, R. Doe was unaware of the City of Wilkes-Barre's policies and customs and that they were a cause of Collins' actions toward her and a cause of her injuries.

The Incident With Plaintiff R.T. Doe

103. On September 13, 2018, R.T. Doe was a passenger in a vehicle stopped by Collins near Heights Murray Elementary School in Wilkes-Barre, Pennsylvania.

104. R.T. Doe was in the front passenger seat; another passenger sat directly behind her.

105. Unbeknownst to R.T. Doe, there were drugs in the vehicle.

106. Both the driver and other passenger were removed from the vehicle and searched.

107. The other passenger was arrested; the driver was allowed to leave the scene.

108. Collins then approached R.T. Doe, who was still in the vehicle.

109. Collins ordered R.T. Doe out of the vehicle.

110. Although a female officer responded to the scene to assist in the other passenger's arrest, Collins insisted on searching R.T. Doe himself.

111. During the search, Collins groped R.T. Doe, touching her breasts, groin, and buttocks.

112. Collins' hands unnecessarily lingered on R.T. Doe's genital areas.

113. During this unwanted sexual contact, Collins made inappropriate comments to R.T Doe.

114. Collins told R.T. Doe that "she's so beautiful" and that her "hair smells so good."

115. Following this forced sexual encounter, Collins asked R.T. Doe, "You know why I'm letting you go, right?"

116. R.T. Doe responded that she assumed she was not being arrested because she did not do anything wrong.

117. "No," Collins stated, "I'll be seeing you soon."

118. R.T. Doe interpreted this comment as Collins implying that he had done her a favor and that therefore she owed him a favor in return.

119. Several days later, Collins attempted to contact R.T. Doe on Facebook.

120. Disturbed by Collins' unwanted sexual contact, R.T. Doe immediately blocked Collins and did not respond.

121. As a result of Collins' actions as described above, R.T. Doe suffered significant injuries and damages.

122. At the time of Collins' actions toward R.T. Doe as described above, R.T. Doe was unaware of the City of Wilkes-Barre's policies and

customs and that they were a cause of Collins' actions toward her and a cause of her injuries.

Wilkes-Barre City Knew of and Tolerated Collins' Misconduct
Creating an Official Policy or Custom Which Led to Plaintiff's Injuries

123. In June of 2011, Wilkes-Barre's Chief of Police, acting as an official representative of Wilkes-Barre City, was warned that there were multiple complaints about Collins.  Wilkes-Barre's Chief of Police, on behalf of Wilkes-Barre City stated that extra scrutiny regarding Collins was not necessary.

124. This warning predated all of the events described in this Complaint between Collins and the plaintiff.

125. Upon information and belief, an investigation into criminal wrongdoing and misconduct of other Wilkes-Barre City police officers commenced in 2014, leading to the indictment and arrest of two Wilkes-Barre police officers in August of 2014 on bank fraud charges.

126. Although the investigation and arrest of other Wilkes-Barre officers regarding bank fraud was unrelated to Collins' misconduct, upon information and belief, a collateral investigation into Collins' misconduct was initiated at this time and Wilkes-Barre City became aware of that investigation.

127. Even though Wilkes-Barre City knew that Collins' misconduct was under investigation by an outside agency, Wilkes-Barre City failed to protect the plaintiff and others by disciplining Collins or removing him from situations where he would be able to commit the type of misconduct described in this Complaint.

128. Instead, Wilkes-Barre City promoted Collins to the position of Community Policing Officer on October 8, 2016.

129. Meanwhile, Collins' misconduct continued, and was known by and tolerated by Wilkes-Barre City.

130. For example, H.A. Doe reported the 2009 forced sexual encounter to a Wilkes-Barre City police officer. The officer responded by stating that "a lot of people" have made accusations of sexual misconduct against Collins and that the woman was "not the only one" reporting his misconduct.

131. Because of his ongoing sexual misconduct with women in the Wilkes-Barre area, Collins developed a reputation among the community as females began to share their stories with each other about their forced sexual contacts with Collins. One such female was arrested with a friend by Wilkes-Barre police for prostitution in 2013.  While being processed at the Wilkes-Barre police station, the female told the officers processing her

that she feared Collins. The female requested that the officer not leave her and her friend alone with Collins. After the other officers advised Collins of the female request and concerns, Collins confronted the female and her friend, demanding to know what they told the other officers. Collins further ordered the female and her friend to give him their phone numbers.

132. In May of 2014, L. Doe was caught shoplifting at Rite Aid in Wilkes-Barre.  She was arrested and gave a false name to the arresting officer because she had a warrant.  At the Wilkes-Barre City police station, Collins encountered L. Doe and told the arresting officer that he knew her as the false name she gave to officers.  Because Collins vouched for her fake name she was released and left the Wilkes-Barre City police department on foot.  Collins immediately left the station and began to follow her. L. Doe was walking from the police station in Wilkes-Barre when Collins pulled over and asked L. Doe if she wanted a ride.  L. Doe accepted the ride from Collins and got in the front of the vehicle. Collins pulled into a parking lot in the vicinity of South Welles Street in Wilkes-Barre and turned off the car's engine.  L. Doe attempted to open the car door and leave, but Collins locked it when she made this attempt.  Collins then placed his hand up L. Doe's leg and inside of her shorts, touched L. Doe's genital area, and inserted his finger into her vagina.  L. Doe cursed

at Collins, told Collins he was hurting her and was crying, but Collins told her she "liked it." Collins wanted L. Doe to perform oral sex on him but she refused. Collins unzipped his pants, exposed his penis and tried to pull L. Doe's hand towards his exposed penis. L. Doe refused to touch Collins' penis, and Collins began masturbating as he continued to touch L. Doe's thigh. Collins then masturbated as he continued to penetrate L. Doe's vagina with his finger. L. Doe stared straight ahead and cried at times while Collins was doing this. Collins ejaculated while masturbating. Collins then asked L. Doe if she wanted him to pay her. Collins then told L. Doe not to tell anyone and mentioned that he "knows [her] family."

133. Sometime between October and December of 2014, a female named R. Doe was walking in the area of Carey Avenue in Wilkes-Barre when Collins pulled over in uniform, in a marked police vehicle, working for Wilkes-Barre City. Collins searched her purse and found cocaine. He drove R. Doe to the same abandoned, secluded building in Wilkes-Barre where he sexually assaulted H. Doe, exposed his penis, and forced R. Doe to perform oral sex on him. Collins ejaculated in R. Doe's mouth. Collins told R. Doe to "keep [her] mouth shut or it will fuck [her] in the long run." Collins then refused to give R. Doe a ride to where he picked her up and left her behind at the abandoned building.

134. In July of 2014, Collins pulled over a vehicle at night coming out of Sherman Hills Complex in Wilkes-Barre while in uniform, in a marked police vehicle, working for Wilkes-Barre.  R.L. Doe was a passenger in the vehicle.  R.L. Doe, the only female passenger, was removed from the vehicle by Collins, who groped her buttocks and breasts and told her he "likes what he feels."  Collins found heroin on R.L. Doe.  Collins did not search the male occupants of the vehicle and allowed them to drive away.  Collins put R.L. Doe in the front seat of his police vehicle, pulled behind the Sherman Hills Complex and forced R.L. Doe to perform oral sex on him in order to avoid charges for possessing heroin.  Although R.L. Doe was crying as she performed oral sex on Collins, he forced her to swallow his ejaculate and made her open her mouth to prove she did so.

135. On November 10, 2014, Collins physically assaulted a disabled female in her home during the course of responding to a neighbor dispute involving her husband.  During the course of this incident, Collins physically trampled on the woman, pinned her to the ground, put his knees in her eyes, pulled her hair and pointed a taser at her face.  The incident led to a lawsuit which was filed against Collins and the City of Wilkes-Barre on February 25, 2016 in the Middle District of Pennsylvania.

136. In 2017 and 2018, Collins began following a female around the downtown area, where she worked.  Collins told her that he knew about her husband going to jail and continued to comment on how beautiful she is.  Collins followed her from Dunkin Donuts on Public Square to the Rite Aid on Public Square.  Every time he saw her he would approach her to tell her how beautiful she was and make suggestive comments to her. Whenever he saw her he would follow her around until she would go back into her job or get in her vehicle and leave.  Each time Collins followed her around and made suggestive comments to her he was in full police uniform.

137. In 2017, a female made a written complaint to Wilkes-Barre City stating that Collins approached her about an alleged vehicle violation, asked for her phone number, and said he would call her later to talk about "working it out another way," leaving her feeling disgusted and "messed up for some time."

138. Although this 2017 written complaint occurred after the lawsuit filed against Collins for his abuse of the disabled female referenced above, this written complaint was never produced by Wilkes-Barre City during discovery as part of Collins' personnel file or as a part of any misconduct file.

22

139. Much of Collins' misconduct described herein is similar to the acts of misconduct Collins committed on the plaintiff, and all involved mistreatment of women.

140. Collins' misconduct warranted and deserved discipline.

141. By knowing of and tolerating Collins' misconduct, and by failing to scrutinize and correct Collins' conduct, Wilkes-Barre City established a municipal custom that was deliberately indifferent to the rights of the plaintiff and others and caused them injury which could have and should have been prevented by appropriate disciplinary action.

<u>Count One</u>
42 U.S.C. § 1983
<u>R.T. Doe v. City of Wilkes-Barre</u>

142. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

143. Wilkes-Barre City was deliberately indifferent to Collins' misconduct and condoned the obvious consequences of its failure to properly supervise and discipline Collins.

144. Wilkes-Barre City knew, and acquiesced to Collins' repeated misconduct, thereby creating a custom.

145. By permitting Collins to continue working for Wilkes-Barre City after receiving complaints and being notified of Collins' misconduct,

Wilkes-Barre City created a situation where the violation of the plaintiff's and others' Constitutional rights was a highly predictable consequence, and a situation likely to recur.

146. Wilkes-Barre City caused a deprivation of the plaintiff's rights because of its failure to act to discipline and/or remove Collins from employment as a police officer.

147. The consequence of allowing Collins to continue to work as a police officer amidst complaints and an investigation by an outside agency regarding his misconduct was obvious, and Wilkes-Barre City acted with deliberate indifference.

148. Wilkes-Barre City engaged in a pattern or continued adherence to an approach that it knew or should know has failed to prevent Collins' misconduct.

Count Two<br>
R.T. Doe v. Collins<br>
(42 U.S.C. § 1983)

149. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

150. Collins' conduct in forcing R.T. Doe into sexual contact with him constituted an unreasonable seizure under the Fourth Amendment to the United States Constitution. In addition, such conduct constituted a

deprivation of plaintiff's due process rights under the Fourteenth Amendment to the United States Constitution.

151. Collins' conduct therefore was a deprivation, under color of state law, of rights guaranteed to plaintiff under the Fourth and Fourteenth Amendments to the United States Constitution.

152. As a result of Collins' violations of plaintiff's Constitutional rights, plaintiff suffered injuries and damages.

<u>Count Three</u>
R.T. Doe v. Collins
(42 U.S.C. § 1983)

153. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

154. Collins caused harm to R.T. Doe which was foreseeable and fairly direct.

155. Collins acted with a degree of culpability that shocks the conscience.

156. The relationship between Collins and R.T. Doe—police officer and detainee—was such that R.T. Doe was a foreseeable victim of Collins' acts, as opposed to members of the general public.

157. Collins affirmatively used his authority in a way that created a danger to R.T. Doe or that rendered R.T. Doe more vulnerable to danger than had Collins not acted at all.

158. Collins' conduct therefore was a deprivation, under color of state law, of rights guaranteed to R.T. Doe under the Fourteenth Amendment to the United States Constitution.

159. As a result of Collins' violations of R.T. Doe's Constitutional rights, R.T. Doe suffered injuries and damages.

Count Four
R.T. Doe v. Collins
(42 U.S.C. § 1983)

160. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

161. Collins' detention of R.T. Doe for the purpose of forced sexual conduct with her was an unreasonable seizure of R.T. Doe.

162. Collins' conduct therefore was a deprivation, under color of state law, of rights guaranteed to R.T. Doe under the Fourth and Fourteenth Amendments to the United States Constitution.

163. As a result of Collins' violations of R.T. Doe's Constitutional rights, R.T. Doe suffered injuries and damages.

## Count Five
### R.T. Doe v. Collins
### (Assault)

164. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

165. Collins intended to put R.T. Doe in reasonable and immediate apprehension of a harmful or offensive contact with her body.

166. As a result of Collins' actions, R.T. Doe was put in reasonable and immediate apprehension of such contact.

167. As a result of Collins' actions, R.T. Doe suffered injuries and damages.

## Count Six
### R.T. Doe v. Collins
### (Battery)

168. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

169. Collins committed the acts described above with the intent to cause a harmful or offensive contact with R.T. Doe's body and/or with the intent to put R.T. Doe in reasonable and immediate apprehension of a harmful or offensive contact with her body.

170. Collins' actions directly and indirectly resulted in harmful and/or offensive contact with R.T. Doe's body.

171. As a result of Collins' actions, R.T. Doe suffered injuries and damages.

WHEREFORE, plaintiff demands judgment as follows:

A. For Count One, an amount to be determined at trial, plus interest;

B.     For Counts Two through Six, an amount to be determined at trial, including punitive damages, plus interest;

C.     For plaintiff's attorneys' fees, pursuant to 42 U.S.C. § 1988;

D.    For the costs and disbursements incurred in this action; and

E.    For such other and further relief as the Court deems just and proper.

DYLLER LAW FIRM
S/ Barry H. Dyller, Esq.
S/  Shelley L. Centini, Esq.
S/  Theron J. Solomon, Esq.
88 North Franklin Street
Wilkes-Barre, PA  18701
(570) 829-4860

S/ Matthew L. Clemente, Esq.
39 South Main Street
Pittston, PA  18640
(570) 266-8986

## Jury Demand

Plaintiff demands a trial by jury on all issues.